UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**     'O'

| Case No. | 2:14-cv-07704-CAS(Ex) | Date | July 27, 2015 |
|---|---|---|---|
| Title | JOAN HARP ET AL. V. STARLINE TOURS OF HOLLYWOOD, INC. ET AL. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Laura Elias | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Dennis Wilson<br>Anthony Luti<br>Julia Aparicio-Mercado | Jeremy Rhyne<br>Seth Pierce<br>Eric Schiffer |

**Proceedings:**    PLAINTIFFS' AMENDED MOTION FOR CLASS CERTIFICATION (dkt. 66, filed June 8, 2015)

## I.   INTRODUCTION & PROCEDURAL HISTORY

Plaintiff Joan Harp initially filed this putative class action against defendants Starline Tours of Hollywood, Inc., Starline Sightseeing Tours, Inc., Starline Tours USA, Inc., Vahid Sapir, Farid Sapir, and Does 1 through 150 (collectively, "Starline" or "Starline defendants") in Los Angeles County Superior Court on December 28, 2012. Dkt. 1-1. Plaintiff filed a first amended complaint ("FAC") in state court on June 14, 2013. Dkt. 1-4. Soon thereafter, the state court struck plaintiff Harp's class allegations, and dismissed Harp as class representative. Dkts. 1-5; 1-6. William Brockman and Andres Reyes were subsequently substituted as named plaintiffs, dkt. 20-1, and EHM Productions, Inc., ("EHM") was added as a named defendant. Dkt. 1-9.

On September 29, 2014, the state court granted plaintiffs leave to file the operative Second Amended Complaint ("SAC"). Dkt. 1-14. The SAC asserts the following claims against Starline and EHM: (1) failure to compensate for all hours worked, in violation of Cal. Labor Code §§ 1182, 1194, 1197, 1197.1, 1198; (2) failure to pay reporting time pay, in violation of Cal. Code Regs. Title 8, §§ 11040, 11090, Subd. 5; (3) failure to pay overtime compensation, in violation of Cal. Labor Code §§ 510, 1194, 1194.2, 1198; (4) failure to pay overtime, in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, et seq.; (5) failure to provide meal and rest periods, in violation of Cal. Labor Code §§ 226.7, 512; (6) failure to provide itemized wage statements, in violation of Cal.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**               'O'

| Case No. | 2:14-cv-07704-CAS(Ex) | Date | July 27, 2015 |
|---|---|---|---|
| Title | JOAN HARP ET AL. V. STARLINE TOURS OF HOLLYWOOD, INC. ET AL. | | |

Labor Code § 226; (7) failure to maintain accurate records, in violation of Cal. Labor Code §§ 1174, 1174.5; (8) failure to pay wages upon discharge, in violation of Cal. Labor Code § 203; (9) violation of the Private Attorneys General Act ("PAGA"), Cal. Labor Code § 2698, et seq.; (10) conversion, in violation of Cal. Civil Code § 3336; (11) failure to reimburse expenses, in violation of Cal. Labor Code § 2802; (12) unfair competition, in violation of Cal. Bus. & Prof. Code § 17200, et seq. Defendants removed the action to this Court on October 3, 2014. Dkt. 1.

By order dated November 25, 2014, this Court denied plaintiffs' motion to remand the action to state court, but declined to exercise supplemental jurisdiction over plaintiffs' state law claims. Dkt. 28. Accordingly, the only claim pending before the Court is plaintiffs' claim that defendants failed to pay its hourly employees overtime compensation, in violation of the FLSA.

On June 8, 2015, plaintiffs filed the instant motion to conditionally certify an FLSA collective action. Dkt. 66.[1] Defendants separately opposed the motion on July 6, 2015, dkts. 75, 76, and plaintiffs replied on July 13, 2015, dkt. 116.[2] The Court held a

---

[1] Plaintiffs' moving papers evince a fundamental misunderstanding of the FLSA collective action mechanism. Although plaintiffs acknowledge the existence of Hoffmann-La Roche Inc. v. Sperling, 493 U.S. 165 (1989)—the seminal case recognizing a court's ability to authorize notice of an FLSA collective action—the motion is devoted exclusively to demonstrating that the proposed class satisfies the requirements of Federal Rule of Civil Procedure 23. It is well established, however, that "the provisions of Rule 23 do not apply to FLSA actions." Jones v. Agilysys, Inc., No. C 12-03516 SBA, 2013 WL 4426504, at *1 (N.D. Cal. Aug. 15, 2013) (citing Genesis Healthcare Corp. v. Symczyk, 133 S.Ct. 1523, 1529 (2013)); Wang v. Chinese Daily News, Inc., 623 F.3d 743, 761 (9th Cir. 2010) ("[T]he clear weight of authority holds that Rule 23 procedures are inappropriate for the prosecution of class actions under § 216(b)").

[2] Starline also filed evidentiary objections to certain portions of the declarations of named plaintiffs Brockman and Reyes, dkts. 77, 78, as well as to the declaration of George Chaffin, a former driver for Starline, dkt. 79. These objections are overruled as MOOT, because the Court does not rely upon the objected-to portions of the declarations

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**     'O'

| Case No. | 2:14-cv-07704-CAS(Ex) | Date | July 27, 2015 |
|---|---|---|---|
| Title | JOAN HARP ET AL. V. STARLINE TOURS OF HOLLYWOOD, INC. ET AL. | | |

hearing on July 27, 2015. Having carefully considered the parties' arguments, the Court finds and concludes as follows.

## II.    BACKGROUND

Plaintiffs allege that defendants "are owners, operators, partners or otherwise in a business venture or business operation related to sightseeing or star searching . . . conducted on a moving vehicle." SAC ¶ 19. As clarified by defendants, "Starline is a tour company that operates over one-hundred sightseeing tours throughout California, New York, and other states." EHM Opp'n at 2; Pierce Decl. ¶ 3; id. Ex. A (printouts from Starline's website). Starline does business in greater Los Angeles County and Orange County, operating between 60 and 180 daily tours that utilize between 65 and 135 vehicles. Starline Opp'n at 3; Farhadi Decl. ¶ 3.[3]

Defendant EHM is a media company that owns the TMZ brand, which "is synonymous with entertainment news and celebrity gossip." EHM Opp'n at 2; see also Alpert Decl. ¶ 2. In 2010, EHM agreed to license the TMZ brand to Starline and provide tour guides in connection with "just one" of Starline's tours—the "TMZ Hollywood Tour." EHM Opp'n at 2; see also Alpert Decl. ¶¶ 4-5.[4] As part of the licensing agreement, EHM provides the TMZ Hollywood Tour guides and content, while Starline provides tour buses, drivers, dispatchers, maintenance, ticket sales personnel, marketing personnel, and "every other logistical requirement." Alpert Decl. ¶ 5. EHM unilaterally hires, supervises, and terminates the TMZ Hollywood Tour guides. Mauer Dec. ¶¶ 2, 3.[5] EHM has employed approximately twenty tour guides over the past three years. Id. ¶ 2.

---

in deciding the instant motion.

[3] Kamrouz Farhadi is the chairman of Starline Tours of Hollywood, Inc. Farhadi Decl. ¶ 2.

[4] Stuart Alpert is the Executive Producer & General Manager of EHM. Alpert Decl. ¶ 1.

[5] Andrew Mauer is the Head of Consumer Products at EHM. Mauer Decl. ¶ 1.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**  'O'

| Case No. | 2:14-cv-07704-CAS(Ex) | Date | July 27, 2015 |
|---|---|---|---|
| Title | JOAN HARP ET AL. V. STARLINE TOURS OF HOLLYWOOD, INC. ET AL. | | |

Only three of Starline's fleet of buses service the TMZ Hollywood Tour. Alpert Decl. ¶ 6.

Starline currently employs 217 hourly employees in various capacities. Starline Opp'n at 3; Farhadi Decl. ¶ 3. Specifically, Starline employs 121 drivers, 11 dispatchers, 54 sales people, 25 customer service representatives, and 6 accounting clerks. Id. Until February 2013, Starline also employed 15 mechanics. Id. Salespeople, who are based primarily in Hollywood, Santa Monica, and Beverly Hills, sell tours from both static locations and handheld devices. Starline Opp'n at 4; Farhadi Decl. ¶ 5. Controllers, who do not appear to be hourly employees, oversee the sales force and implement their meal breaks and rest periods. Id. Customer service representatives handle online, telephone, and on-site hotel tour bookings. Starline Opp'n at 4; Farhadi Decl. ¶ 6. Dispatchers located in Hollywood, Santa Monica, Vernon, and Anaheim create and implement schedules for drivers. Starline Opp'n at 4; Farhadi Decl. ¶ 7. Accounting clerks are based in Hollywood, and are supervised by the accounting manager. Starline Opp'n at 4; Farhadi Decl. ¶ 8.

Starline drivers are divided into several different categories: (1) tour drivers (including charters and trolleys); (2) TMZ tour drivers; (3) run around drivers; and (4) hop-on/hop-off drivers. Starline Opp'n at 5; Farhadi Decl. ¶ 9. Each group of drivers is supervised by a different general manager, dispatch supervisor, and dispatcher. Id.; see also Slaughter Decl. ¶¶ 3,4; Robinson Decl. ¶¶ 3,4.[6]

In April 2012, Starline defendants hired named plaintiff William Brockman as a tour driver, ultimately terminating his employment in May 2013. Brockman Decl. ¶ 2. According to Brockman, he was also hired by defendant EHM. Id. ¶ 3. Brockman served as a driver on the TMZ Hollywood Tour, as well as "elsewhere on different driving assignments." Id. ¶ 7. Named plaintiff Andres Reyes was hired by Starline as a tour driver in August 2012, and was terminated in October 2013. Reyes Decl. ¶ 2. Reyes served as a driver on "various tours," including the hop-on/hop-off and double decker bus

---

[6] Gwendolyn Slaughter is the general manager of Starline's Tour Department. Slaughter Decl. ¶ 2. Paul Robinson is the general manager of Starline's Hop-on/Hop-off Department. Robinson Decl. ¶ 2.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**     'O'

| Case No. | 2:14-cv-07704-CAS(Ex) | Date | July 27, 2015 |
|---|---|---|---|
| Title | JOAN HARP ET AL. V. STARLINE TOURS OF HOLLYWOOD, INC. ET AL. | | |

tours. Id. ¶ 4. George Chaffin, who is not a named plaintiff, was hired as a tour driver for Starline in June 2013 and terminated in March 2014. Chaffin Decl. ¶ 2. Chaffin likewise drove "various tours," including the TMZ Hollywood Tour. Id. ¶ 4.

Brockman, Reyes and Chaffin each aver that, though they often worked more than 40 hours in a week, defendants frequently did not pay them the required time-and-a-half compensation for their overtime hours. See Brockman Decl. ¶¶ 8,10; Reyes Decl. ¶ 5; Chaffin Decl. ¶ 7. More specifically, plaintiffs contend that defendants routinely prevented drivers from taking lunch breaks, and the lunch breaks they did take were frequently interrupted. Plaintiffs assert that "this caused an accumulation of unpaid overtime because . . . as a policy, meal breaks were always deducted from payroll," regardless of whether the breaks were actually taken. Mot. Cert. at 13.

Starline defendants proffer the affidavits of twenty-nine current and former hourly employees—including drivers, dispatchers, customer service representatives, salespersons, accounting clerks, and mechanics—each of whom avers that they routinely take uninterrupted meal breaks, and are never prevented by Starline from doing so. See, e.g., Lassen Decl. (tour driver) ¶¶ 3, 4; Brown Decl. (hop-on/hop-off driver) ¶¶ 3, 5; Guiang Decl. (sales) ¶¶ 3, 4. Each mechanic, customer service representative, salesperson, dispatcher, and accounting clerk likewise avers that they keep track of their hours worked by clocking in at the beginning and end of their shift, as well as at the beginning and end of their meal breaks. See, e.g., Amin Decl. (mechanic) ¶ 6; Adrian Decl. (customer service) ¶ 6; Martinez Decl. (sales) ¶ 6; Guevarra Decl. (dispatcher) ¶ 6; Yamini Decl. (accounting) ¶ 6. Drivers record their hours by either clocking in and out, see, e.g., Roberts Decl. (tour driver) ¶ 6; Valentin Decl. (hop-on/hop-off driver) ¶ 7, or by keeping track on a payroll summary sheet, which is then turned in to the driver's dispatcher for payroll calculation, see, e.g., Sandoval Decl. (run-around driver) ¶ 6; Mejia Decl. (TMZ tour driver) ¶ 7.

Each hourly employee avers that a thirty-minute meal break is automatically deducted from their recorded hours, regardless of whether they report taking such a break. See, e.g., Shiah Decl. (tour driver) ¶ 6; Mendoza Decl. (accounting) ¶ 6; Farkhoyan Decl. (TMZ tour driver) ¶ 7; Manuelles Decl. (dispatcher) ¶ 6; Thomas Decl. (customer service) ¶ 6; Shahjahan Decl. (sales) ¶ 6. Starline's chairman confirms that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:14-cv-07704-CAS(Ex) | Date | July 27, 2015 |
| Title | JOAN HARP ET AL. V. STARLINE TOURS OF HOLLYWOOD, INC. ET AL. | | |

this daily, automatic deduction occurs for all categories of hourly employees. Farhadi Dec. ¶ 10. Additionally, the General Manager of the Tour Department avers that, when a driver cannot take a meal break, "they are instructed to notify their dispatch supervisor so that the automatic meal break deduction on their time card can be reversed." Slaughter Decl. ¶ 8; accord Robinson Decl. (General Manager, Hop-on/Hop-off Department).

To remedy this alleged miscalculation of hours and resulting underpayment of overtime wages, plaintiffs seek to certify a collective action consisting of:

> All individuals who have been employed or are currently employed by the Defendants, or any of them, as hourly workers performing work relating to tours or carrying paying passengers in California at any time since December 28, 2009, and continuing while this action is pending.

Mot. Cert. at 4.

### III. LEGAL STANDARD

Congress enacted the FLSA in 1938 to establish nationwide minimum wage and maximum hours standards. Moreau v. Klevenhagen, 508 U.S. 22, 25 (1993). The FLSA requires employers to pay covered employees overtime compensation of one and one-half times the regular rate of pay for all hours worked in excess of forty hours per week, unless an exemption applies. 29 U.S.C. § 207(a)(1). To ensure compliance with this requirement, the FLSA authorizes actions by employees to recover unpaid overtime wages and an equal amount as liquidated damages for violation of the FLSA's overtime provisions. 29 U.S.C. § 216(b).

In addition to bringing individual suits, the FLSA allows employees to bring a collective action on behalf of other "similarly situated" employees based on alleged violations of the FLSA. 29 U.S.C. § 216(b). A "collective action" differs from a class action. McElmurry v. U.S. Bank Nat'l Ass'n, 495 F.3d 1136, 1139 (9th Cir.2007). "In a class action, once the district court certifies a class under Rule 23, all class members are bound by the judgment unless they opt out of the suit. By contrast, in a collective action each plaintiff must opt into the suit by 'giv[ing] his consent in writing.' " Id. (citing 29

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**  'O'

| Case No. | 2:14-cv-07704-CAS(Ex) | Date | July 27, 2015 |
|---|---|---|---|
| Title | JOAN HARP ET AL. V. STARLINE TOURS OF HOLLYWOOD, INC. ET AL. | | |

U.S.C. § 216(b)).  As a result, "unlike a class action, only those plaintiffs who expressly join the collective action are bound by its results."  Id. (citing 29 U.S.C. § 256).  Section 216(b) does not require district courts to approve or authorize notice to potential plaintiffs, but it is "within the discretion of a district court" to authorize such notice.  Hoffmann–La Roche Inc. v. Sperling, 493 U.S. 165, 173 (1989).  The plaintiff bears the burden to show that he and the proposed class members are "similarly situated."  See Adams v. Inter–Con Security Sys., Inc., 242 F.R.D. 530, 535 (N.D. Cal. Apr. 11, 2007) (citing 29 U.S.C. § 216(b)).

The FLSA does not define the term "similarly situated."  Although the Ninth Circuit has not yet articulated the appropriate test for certifying an FLSA collective action, district courts in this Circuit generally apply a two-step approach.  See, e.g., Benedict v. Hewlett-Packard Co., No. 13-CV-00119-LHK, 2014 WL 587135 (N.D. Cal. Feb. 13, 2014); Reed v. County of Orange, 266 F.R.D. 446, 449 (C.D. Cal. 2010); Edwards v. City of Long Beach, 467 F.Supp.2d 986, 990 (C.D. Cal. 2006); Leuthold v. Destination Am., Inc., 224 F.R .D. 462, 466 (N.D. Cal .2004).  Under the first step, the court makes an initial "notice-stage" determination as to whether potential opt-in plaintiffs are similarly situated to the representative plaintiffs, deciding if a collective action should be certified for the sole purpose of sending notice of the action to potential class members.  Leuthold, 224 F.R.D. at 467.  This determination is "based primarily on the pleadings and any affidavits submitted by the parties."  Id.  The standard applied at this stage has been described as "fairly lenient," id., requiring little more than substantial allegations, supported by declarations or discovery, that "the putative class members were together the victims of a single decision, policy, or plan."  Villa v. United Site Services of Ca., No. 5:12–CV–00318–LHK, 2012 WL 5503550, at *13 (N.D. Cal. Nov. 13, 2012) (citation omitted); see also Morton v. Valley Farm Transport, Inc., No. C–06–2933–SI, 2007 WL 1113999, at *2 (N.D. Cal. Apr. 13, 2007) (describing burden as "not heavy" and requiring plaintiffs to merely show a "reasonable basis for their claim of class-wide" conduct) (internal quotation marks and citation omitted).  The standard "typically results in conditional class certification."  Leuthold, 224 F.R.D. at 467.  Moreover, "[p]laintiffs need not conclusively establish that collective resolution is proper, because a defendant will be free to revisit this issue at the close of discovery."  Benedict, 2014 WL 587135, at *5 (citing Kress v. PricewaterhouseCoopers, LLP, 263 F.R.D. 623, 640 (E.D. Cal. 2009)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          'O'

| Case No. | 2:14-cv-07704-CAS(Ex) | Date | July 27, 2015 |
|---|---|---|---|
| Title | JOAN HARP ET AL. V. STARLINE TOURS OF HOLLYWOOD, INC. ET AL. | | |

    In the second stage, which is reached once discovery is complete and the case is ready to be tried, the party opposing class certification may move to decertify the class. Reed, 266 F.R.D. at 449. The court then must make a factual determination regarding the propriety and scope of the class and must consider the following factors: (1) the disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to the defendants with respect to the individual plaintiffs; and (3) fairness and procedural considerations. Pfohl v. Farmers Ins. Grp., 2004 WL 554834, *2–3 (C.D. Cal. Mar. 1, 2004) (citing Thiessen v. General Electric Capital Corp., 267 F.3d 1095, 1103 (10th Cir. 2001)). Should the court determine on the basis of the complete factual record that the plaintiffs are not similarly situated, then the court may decertify the class and dismiss the opt-in plaintiffs without prejudice. Leuthold, 224 F.R.D. at 467.

**IV. DISCUSSION**

    **A. The Notice-Stage Standard Applies Here**

    As a preliminary matter, the Court must determine which standard to apply to the instant motion. Defendants contend that the Court should apply the second-stage analysis, since "substantial discovery has taken place which bears upon the overtime issues which are the subject of the FLSA claim." Starline Opp'n at 14. Plaintiffs, in contrast, argue that the Court should undertake the first-stage analysis, because plaintiffs have only taken "brief depositions of [defendants'] managerial and dispatcher employees to give an explanation of the policies at issue," but have not yet deposed other relevant employees. Reply at 4.

    Although the parties have engaged in some discovery, the Court concludes that adopting the first-stage analysis is appropriate because discovery is not yet complete. Courts in the Ninth Circuit generally decline to reach the more rigorous, second-stage analysis before the close of discovery. See, e.g., Kress, 263 F.R.D. at 629 ("Courts within this circuit . . . refuse to depart from the notice stage analysis prior to the close of discovery."); Villa v. United Site Servs. of California, Inc., No. 5:12-CV-00318-LHK, 2012 WL 5503550, at *13 (N.D. Cal. Nov. 13, 2012) (applying first-stage analysis where "discovery is still ongoing"). Indeed, "[s]kipping to the second stage not only requires the court to evaluate an incomplete factual record—it interferes with the future

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:14-cv-07704-CAS(Ex) | Date | July 27, 2015 |
| Title | JOAN HARP ET AL. V. STARLINE TOURS OF HOLLYWOOD, INC. ET AL. | | |

completion of that record." Benedict, 2014 WL 587135, at *7. Here, discovery not only remains open, the Court has yet to issue a scheduling order setting a discovery cutoff date. Accordingly, the Court will "begin at the beginning," Leuthold, 224 F.R.D. at 468, and determine whether it should conditionally certify the class for the purpose of providing notice.

### B.  Application of Notice-Stage Standards

Before applying the first-stage standard to the case at hand, the Court notes that much of the parties' briefing appears to be based on the erroneous assumption that the FLSA incorporates California law. Specifically, defendants contend that plaintiffs' FLSA claim is predicated on defendants' alleged failure to provide meal periods and rest breaks in accordance with California law, resulting in the claimed miscalculation of hours worked and overtime owed. Starline Opp'n at 1. In light of this, the majority of Starline's opposition is devoted to arguing that, under the rule announced in Brinker Rest. Corp. v. Superior Court, 53 Cal. 4th 1004 (2012), plaintiffs must "establish a company-wide policy or practice of *prohibiting* employees from taking meal periods." Starline Opp'n at 18 (emphasis in original).

Although there is no published Ninth Circuit opinion addressing this issue, the First Circuit has explained that section 18(a) of the FLSA, which permits states to adopt higher wage and hour standards than those established by the FLSA, "does not purport to incorporate existing state law." Cosme Nieves v. Deshler, 786 F.2d 445, 452 (1st Cir. 1986); see also Bruns v. Municipality of Anchorage, 182 F.3d 924 (9th Cir. 1999) (citing Cosme and concluding that "plaintiffs' attempted melding of the FLSA and state-law claims does not withstand scrutiny.") (unpublished); Gilb v. Chiang, 186 Cal. App. 4th 444, 472 (2010) (citing Cosme and rejecting "the proposition that the FLSA federalizes state minimum wage laws."); Gurung v. Malhotra, 851 F. Supp. 2d 583, 592 (S.D.N.Y. 2012) (quoting Cosme and declining to read the FLSA as "incorporat[ing] existing state law"). Here, plaintiffs predicate their FLSA claim, at least in part, on defendants' alleged policy of "underpay[ing] on overtime over eight hours a day by discounting for meal breaks that were not taken and failing to account for time off the clock." Mot. Cert. at 3. This predicate fails, however, because only California law requires employers to pay time-and-a-half for hours worked in excess of eight hours in any given workday. Cal. Lab. Code §

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**    'O'

| Case No. | 2:14-cv-07704-CAS(Ex) | Date | July 27, 2015 |
|---|---|---|---|
| Title | JOAN HARP ET AL. V. STARLINE TOURS OF HOLLYWOOD, INC. ET AL. | | |

510(a); Advanced-Tech Sec. Servs., Inc. v. Superior Court, 163 Cal. App. 4th 700, 707 (2008) (explaining that, in contrast to Cal. Lab. Code § 510(a), the FLSA "does not require overtime payments for a workday in excess of 8 hours.").

Plaintiffs' FLSA claim, however, is not predicated exclusively on California law. Although the FLSA does not mandate meal breaks, where an employer opts to provide such breaks, regulations promulgated by the Department of Labor permit an employer to deduct such time from an employee's hours only where the meal period is "bona fide." See 29 C.F.R. § 785.19(a).[7] A bona fide meal period requires that the employee be "completely relieved from duty." Id. "The employee is not relieved if he is required to perform any duties, whether active or inactive, while eating." Id. Thus, to the extent that plaintiffs contend that defendants automatically deducted thirty minutes from their daily hours—regardless of whether these meal breaks were bona fide or even taken—the accrual of such thirty-minute deductions could indeed result in unpaid overtime for hours worked in excess of forty each week.

Mindful of the foregoing, the Court turns to application of the notice-stage standard. As set forth above, plaintiffs must present "substantial allegations, supported by declarations or discovery, that the putative class members were together the victims of a single decision, policy, or plan." Kress, 263 F.R.D. at 629. Here, the affidavits submitted by both parties indicate that all of Starline's hourly employees are subject to a uniform automatic thirty-minute deduction for meal periods.

However, the weight of authority holds that "standing alone, 'automatic meal deduction policies are not *per se* illegal' under the FLSA." Gessele v. Jack in the Box, Inc., No. 3:10-CV-960-ST, 2013 WL 1326563, at *23 (D. Or. Jan. 28, 2013) report and recommendation adopted, 2013 WL 1326538 (D. Or. Apr. 1, 2013) (quoting Wolman v. Catholic Health Sys. of Long Island, Inc., 853 F. Supp. 2d 290, 294 (E.D.N.Y. 2012) aff'd in part, rev'd in part on other grounds sub nom. Lundy v. Catholic Health Sys. of Long

---

[7] The Ninth Circuit generally defers to the Department of Labor's interpretation of the FLSA. Baldwin v. Trailer Inns, Inc., 266 F.3d 1104, 1112, n.4 (9th Cir. 2001)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:14-cv-07704-CAS(Ex) | Date | July 27, 2015 |
| Title | JOAN HARP ET AL. V. STARLINE TOURS OF HOLLYWOOD, INC. ET AL. | | |

Island Inc., 711 F.3d 106 (2d Cir. 2013)); White v. Baptist Mem'l Health Care Corp., 699 F.3d 869, 873 (6th Cir. 2012) ("An automatic meal deduction system is lawful under the FLSA."); Quickley v. Univ. of Maryland Med. Sys. Corp., No. CIV. CCB-12-321, 2012 WL 4069757, at *4 (D. Md. Sept. 14, 2012) ("automatic mealtime deduction is not a *per se* FLSA violation."); Camesi v. Univ. of Pittsburgh Med. Ctr., No. CIV.A.-09-85J, 2011 WL 6372873, at *4 (W.D. Pa. Dec. 20, 2011) (decertifying collective action in part because an "employer's use of automatic meal break deductions is not *per se* violative of the FLSA"). This is because an employer "may legally shift the burden to their employees to cancel the automatic deduction if they work through an unpaid meal break." Gessele, 2013 WL 1326563, at *23 (quoting Wolman, 853 F.Supp. 2d at 301); see also Wage & Hour Div., U.S. Dep't of Labor, Opinion Letter, FLSA2007–1NA, at *1 (May 14, 2007) (implementation of automatic pay deduction for lunch breaks "does not violate the FLSA so long as the employer accurately records actual hours worked, including any work performed during the lunch period"). Thus, when such an automatic deduction exists, "plaintiffs must show 'that enforcement of the automatic deduction policy created a policy-to-violate-the-policy.' " Id. (quoting Camesi, 2011 WL 6372873, at *4); accord Saleen v. Waste Mgmt., Inc., No. CIV 08-4959, 2009 WL 1664451, at *4 (D. Minn. June 15, 2009) aff'd, 649 F. Supp. 2d 937 (D. Minn. 2009)).

The Court concludes that plaintiffs have made substantial allegations that defendants maintained a "policy-to-violate-the-policy," but only as to drivers—not all hourly employees. Plaintiffs proffer three declarations from individuals exclusively employed as drivers, and each avers that they were often prevented from taking lunch breaks, but that such breaks were nonetheless automatically deducted from their reported hours. See Reyes Decl. ¶¶ 11-14; Brockman Decl. ¶¶ 8,9; Chaffin Decl. ¶¶ 7, 8.[8]

---

[8] Although defendants proffer myriad, and nearly identical, declarations from drivers disputing these allegations, "[t]he fact that a defendant submits competing declarations will not as a general rule preclude conditional certification." Harris v. Vector Mktg. Corp., 716 F. Supp. 2d 835, 838 (N.D. Cal. 2010); see also Escobar v. Whiteside Const. Corp., No. C-08-01120 WHA, 2008 WL 3915715, at *4 (N.D. Cal. Aug. 21, 2008) (explaining that declarations creating a "he-said-she-said situation" should not preclude conditional certification).

| Case No. | 2:14-cv-07704-CAS(Ex) | Date | July 27, 2015 |
|---|---|---|---|
| Title | JOAN HARP ET AL. V. STARLINE TOURS OF HOLLYWOOD, INC. ET AL. | | |

Although defendants proffer evidence that drivers are instructed to notify their dispatch supervisor to reverse automatic deductions where a meal break is missed, plaintiffs' affidavits plausibly suggest that either these instructions were insufficiently communicated or, despite notification, the deductions were not reversed. See Quickley, 2012 WL 4069757, at *5 ("When the employer's automatic deduction policy shifts the burden to employees to report time worked during meal breaks, the policy must be made clear to employees, and the employer must make every effort to facilitate reporting opportunities.") (citing Valcho v. Dallas Cnty. Hosp. Dist., 574 F. Supp. 2d 618, 623 (N.D. Tex. 2008)).

  Plaintiffs, however, have not shown that drivers are similarly situated to all other hourly employees. Plaintiffs' affidavits reveal that it was the nature of their work as drivers that allegedly caused them to miss meal breaks. See, e.g., Reyes Decl. ¶ 11 ("I Asked for lunch, and dispatchers . . . said no . . . Most of the time they told me to go one more time around."). Plaintiffs, however, proffer no evidence or allegations that dispatchers, accounting clerks, mechanics, salespeople, and customer service representatives, though likewise subject to the automatic deduction policy, experienced similar job pressures such that enforcement of the automatic deduction policy created a policy-to-violate-the policy. Again, it is not "the mere existence" of an automatic deduction mechanism that violates the FLSA, but rather, it is "the failure of an employer to compensate employees who work through those unpaid meal breaks, and to . . . ensure that when working through or during unpaid meal breaks they are compensated, that potentially runs afoul of the Act." Fengler v. Crouse Health Found., Inc., 595 F. Supp. 2d 189, 195 (N.D.N.Y. 2009); id. at 196 (certifying collective action as to certain hourly employees, but declining to certify as to all hourly employees, since "nothing in the record . . . suggest[s] that the same conditions prevailed with regard to [the excluded] employees which would mandate their working through or during break.").

  As to defendant EHM, plaintiffs assert that EHM is also responsible for any unpaid overtime caused by missed meal breaks, since Brockman "at one time drove the EHM tour for Starline and EHM as part of his job duties." Mot. at 3; see also Brockman Decl. ¶ 3 (stating that he was "trained on the TMZ Tour route and duties by an EHM tour guide."). At most, this evidence suggests that EHM may have jointly employed drivers who worked the TMZ Hollywood Tour and, accordingly, may share liability with Starline

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**  'O'

| Case No. | 2:14-cv-07704-CAS(Ex) | Date | July 27, 2015 |
|---|---|---|---|
| Title | JOAN HARP ET AL. V. STARLINE TOURS OF HOLLYWOOD, INC. ET AL. | | |

for the unlawful practices discussed herein, insofar as they affected these specific drivers. The allegations provide no basis, however, for imposing liability on EHM for the alleged non-payment of overtime to Starline drivers who never served the TMZ Hollywood Tour.

Lastly, although plaintiffs seek to certify a class dating back to December 28, 2009, EHM asserts that this definition is temporally overbroad. The Court agrees. The FLSA provides that an action for unpaid overtime compensation "may be commenced within two years after the cause of action accrued . . . except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." 29 U.S.C. § 255(a). A claim accrues on the date the employer fails to pay the required compensation—i.e., the regular pay day following the pay period during which a plaintiff alleges under compensation. 29 C.F.R. § 790.21(b); Keating-Traynor v. AC Square, 343 Fed. App'x 214, 215 (9th Cir. 2009) ("The statute of limitations for an FLSA claim accrues the day the employee's paycheck is normally issued, but isn't."). Further, where plaintiffs bring a collective action, plaintiffs are "required to file written consents with th[e] Court to commence their FLSA collective-action claims." Gessele v. Jack in the Box, Inc., 6 F. Supp. 3d 1141, 1158 (D. Or. 2014), as amended (May 15, 2014) (collecting cases interpreting the commencement requirements set forth in 29 U.S.C.A. § 256). If an action accrues on the date of nonpayment, and commences when a written consent is filed, it follows that conditional certification may only encompass claims that accrued in the preceding three years. See, e.g., Romero v. Producers Dairy Foods, Inc., 235 F.R.D. 474, 484 (E.D. Cal. 2006) (applying three-year limitations period "[g]iven the lenient standard" applicable to conditional certification).

In summary, plaintiffs have only established that they are similarly situated to other hourly drivers employed by defendants. Further, as to EHM, conditional certification may only include drivers who worked the TMZ Hollywood Tour.

## V. CONCLUSION

In accordance with the foregoing, the Court GRANTS plaintiffs' motion for conditional certification of the following class and subclass:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**  'O'

| Case No. | 2:14-cv-07704-CAS(Ex) | Date | July 27, 2015 |
|---|---|---|---|
| Title | JOAN HARP ET AL. V. STARLINE TOURS OF HOLLYWOOD, INC. ET AL. | | |

<u>Starline Driver Class:</u> All current and former hourly drivers who, within three years preceding the date of their decision to opt in to this action, were employed by the Starline defendants in the State of California.

<u>Starline and EHM Driver Subclass:</u> All current and former hourly drivers who, within three years preceding the date of their decision to opt in to this action, were employed by both the Starline defendants and EHM in the State of California.

The Further Scheduling Conference is continued to **August 24, 2015** at **11:00 A.M.** A Updated Joint Report shall be filed on or before August 17, 2015, if needed.

IT IS SO ORDERED.

|   |   | 00 | : | 15 |
|---|---|---|---|---|
|   | Initials of Preparer | | CMJ | |